UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

**CRIMINAL ACTION NO. 05-90-DLB-CJS-1**

**UNITED STATES OF AMERICA**                                                            **PLAINTIFF**

**VS.**                   **MEMORANDUM OPINION AND ORDER**

**RANDALL SUTTON**                                                                     **DEFENDANT**

*********************************

This matter is before the Court upon the Defendant's Motion to Dismiss the Indictment based on alleged violations of his speedy trial rights. (Doc. # 121). The United States having submitted its Response in Opposition to the Motion (Doc. # 123), and the Court having heard oral argument (Doc. # 127), the Motion is now ripe for review. For the reasons that follow, Defendant's Motion will be **denied**.

**I.   Procedural Background**

On December 14, 2005, the Defendant and co-defendant Jessie Monghan[1] were charged in the Eastern District of Kentucky with armed bank robbery, brandishing a firearm in furtherance of a crime of violence, and being a felon in possession of a firearm. (Doc. # 1). According to the Indictment, the crimes occurred on July 27, 2005. *Id.* On December 21, 2005, the Defendant was charged in the Southern District of Ohio with three additional bank robberies and related firearms offenses. When the Kentucky Indictment was

---

[1] Monghan was convicted at trial in the Eastern District of Kentucky and is serving a four-hundred and five (405) month sentence.

returned, the Defendant was in the custody of the U.S. Marshal in the Southern District of Ohio.

On November 1, 2006, the Defendant signed and entered into a global plea agreement whereby he agreed to plead guilty to two of the Ohio charges and both of the Kentucky charges. (Doc. # 123-2). The plea agreement required Defendant to plead guilty to the Kentucky charges pursuant to Rule 20 of the Federal Rules of Criminal Procedure. (Doc. # 123-2). Soon thereafter, and as part of the plea agreement, the Defendant formally requested transfer of the Kentucky charges for disposition in Ohio under Rule 20. (Doc. # 4). In the Rule 20 paperwork, Defendant waived his right to trial on the Kentucky charges in the Eastern District of Kentucky and expressed his desire to enter a guilty plea to those charges in the Southern District of Ohio.

On February 15, 2007, Defendant appeared before the Southern District of Ohio and pled guilty to two of the Ohio charges – one count of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d) and one count of brandishing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c). The transcript of that hearing reflects that the Defendant expressed his intent to plead guilty to the Kentucky charges during that proceeding. (Doc. # 123-1). However, because the Clerk's Office in Cincinnati had not yet received the Rule 20 paperwork transferring that case from Kentucky to Ohio, the Defendant was unable to formally enter his guilty plea to the Kentucky charges at that time. Rather, the parties agreed that he would enter a guilty plea to the Ohio charges and that the Court would take up the Kentucky charges at a later date. Although Defendant could not formally enter a guilty plea to the Kentucky charges at that time, the transcript reflects that the Defendant acknowledged his role in the Kentucky armed bank robbery. *Id.* In fact,

the transcript reveals that Defendant agreed to the facts as summarized by FBI Agent Tony Ott, which included the Kentucky conduct. (Doc. # 123-1, at 22-23). The statement of facts signed by the Defendant also included facts related to the Kentucky charges. (Doc. # 123-3). At the conclusion of the plea proceeding, the Court told the attorneys that the Defendant would be brought back in for a formal plea to the Kentucky charges once the Rule 20 paperwork was completed.

On June 27, 2007, the Rule 20 paperwork was filed in the Southern District of Ohio, and one week later, the court granted a Motion to Consolidate the Kentucky case with the Ohio case for sentencing purposes. On August 29, 2007, the Defendant was sentenced on both the Ohio and Kentucky charges. Although the Defendant had not formally plead guilty to the Kentucky charges, neither party objected to sentencing him for offenses committed in both districts and neither party brought the need for a guilty plea to the Kentucky charges to the Court's attention. The Defendant was sentenced to concurrent terms of eleven years on both bank robbery charges (one in the Southern District of Ohio and one in the Eastern District of Kentucky), and consecutive terms of seven years for the Ohio § 924(c) charge and twenty-five years for the Kentucky § 924(c) charge, for a total sentence of forty-three years. The Court also ordered the Defendant to pay restitution to both banks, including $10,046.00 to Huntington Bank for the Kentucky bank robbery.

The Defendant filed a Notice of Appeal on September 1, 2007 in the Southern District of Ohio, but did not raise the lack of a formal guilty plea as an issue in his direct appeal. Almost five years later, on April 19, 2012, Defendant filed a Motion to Vacate under 28 U.S.C. § 2255, challenging his conviction and sentence on the Kentucky charges. In his § 2255 Motion in the Southern District of Ohio, Defendant alleged, in part, that he

never pled guilty to the Kentucky charges. On September 30, 2015, the Southern District of Ohio granted Defendant's § 2255 Motion in part and vacated his conviction and sentence on the Kentucky charges. On December 23, 2015, the Southern District of Ohio returned the Kentucky charges back to the Eastern District of Kentucky. (Doc. # 111).

On January 20, 2016, the Eastern District of Kentucky held a brief status conference and appointed counsel for Defendant. (Doc. # 115). He was arraigned and entered a plea of not guilty to the Indictment on February 18, 2016. (Doc. # 117). Another status conference was held on February 23, 2016, wherein a pre-trial conference was scheduled for April 11, 2016, and jury trial for April 18, 2016. (Doc. # 120). Thereafter, on February 26, 2016, Defendant filed the pending Motion to Dismiss, alleging violations of the statute of limitations, the Speedy Trial Act, and his Sixth Amendment right to a speedy trial. (Doc. # 121). The Court took Defendant's Motion under submission after hearing oral argument on April 12, 2016. (Doc. # 127).

**II.     Discussion**

    **A.     *Statute of Limitations***

The applicable statute of limitations, 18 U.S.C. § 3823(a), requires a Defendant to be indicted within five years of the conduct being committed. The statute of limitations does not address delays that occur after indictment. In this case, the offense was committed on July 27, 2005, and the Defendant was indicted on December 14, 2005, approximately five months after the offense was committed. Therefore, no violation of the statute of limitations occurred.

    **B.     *The Speedy Trial Act***

"The Speedy Trial Act requires that in any case in which the defendant has not

entered a guilty plea, trial must commence within 70 days of the filing of the indictment or the date of the defendant's arraignment, whichever occurs later." *United States v. Brown*, Nos. 14-6543, 14-6544, 2016 WL 1161266 (6th Cir. Mar. 24, 2016) (citing 18 U.S.C. § 3161(c)(1)). The Act "also includes a list of delays that must be excluded from the 70-day period." *Id.* (citing 18 U.S.C. § 3161(h)). "If the government exceeds these limits and the Act does not exclude the delays ... the Act requires the district court to dismiss the case on the defendant's motion." *United States v. Myers*, 666 F.3d 401, 404 (6th Cir. 2012). The Sixth Circuit has held that establishing "a prima facie case that the government violated" the Speedy Trial Act is "a simple matter of producing a calendar and showing that more than seventy days have passed since the indictment (or first appearance) and trial has yet to begin;" however, there are certain cases where the Speedy Trial Act analysis is slightly more complicated than looking at a calendar. *United States v. Jenkins*, 92 F.3d 430 (6th Cir. 1996). This is certainly one of those cases.

Defendant claims that his rights under the Speedy Trial Act have been violated and thus, dismissal of the indictment is required. (Doc. # 121, p. 5). Specifically, Defendant suggests two possible dates for the start of the Speedy Trial Act clock in this case: (1) February 15, 2007, the date Defendant pled guilty to the Ohio charges, or (2) August 29, 2007, the date Defendant was sentenced on both the Ohio and Kentucky charges. *Id.* at 6. Using either start date, Defendant asserts that the seventy-day time limitation outlined in the Speedy Trial Act was "exceeded by over eight years." *Id.* In response, the United States claims that January 20, 2016, the date Defendant first appeared before the Eastern District of Kentucky, should be the start date for Speedy Trial Act purposes. However, Sixth Circuit precedent establishes that neither Defendant nor the United States have

offered the correct start date for calculating compliance with the Speedy Trial Act's time limitations.

First, the Court rejects Defendant's suggestion that the Speedy Trial Act clock began during one of his appearances before the Southern District of Ohio. "The plain language of the [Speedy Trial Act] requires a not guilty plea to begin the clock running." *United States v. O'Dell*, 154 F.3d 358, 360 (6th Cir. 1998). Section 3161(c)(1) provides that "*in any case in which a plea of not guilty is entered*, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days ..." *O'Dell*, 154 F.3d at 360 (citing 18 U.S.C. § 3161(c)(1)). After examining the legislative history of the Speedy Trial Act, the Sixth Circuit determined that "the purpose of the not guilty plea requirement is to conserve judicial resources by avoiding unnecessary trial scheduling in cases where it is more likely that the defendant will plead guilty or nolo contendre." *O'Dell*, 154 F.3d at 360. In addition, the Sixth Circuit found that "[r]equiring a not guilty plea also serves to conserve prosecutorial resources; a prosecutor need not prepare for a potential trial until the defendant has entered a not guilty plea." *Id*. In *O'Dell*, the Sixth Circuit held that the period between the date on which defendant first appeared and pled guilty to the indictment/information, and the date on which the charges were dismissed, was excludable in determining whether defendant's Speedy Trial Act rights were violated after he was later reindicted. *Id*. Specifically, the Sixth Circuit "refuse[d] to second guess Congress's choice of a brightline, unqualified requirement of a not guilty plea" and held that because the defendant had not entered a not guilty plea, the Speedy Trial Act "clock was not triggered" during the prior case in which the defendant had entered into an unenforceable plea agreement and later withdrew his guilty plea. *Id* at 362.

In the present case, the Speedy Trial Act clock did not begin at any of the Defendant's appearances in the Southern District of Ohio for two reasons. First, the Defendant never entered a plea of not guilty to the Kentucky charges during any of his appearances before the Southern District of Ohio; thus, the Speedy Trial Act was never triggered and the clock never started. As the Sixth Circuit held in *O'Dell*, the plain language of the Speedy Trial Act provides that the clock starts ticking only once a defendant pleads *not guilty*. Second, the Southern District of Ohio never had jurisdiction to try Defendant, even if he had pled not guilty. The Southern District of Ohio obtained jurisdiction on June 21, 2007, pursuant to Rule 20, which permits the transfer of a prosecution for plea and sentence. "If the defendant pleads not guilty after the case has been transferred under Rule 20(a), the clerk must return the papers to the court where the prosecution began, and that court must restore the proceeding to its docket." Fed. R. Crim. P. 20(c). Rule 20 transfers jurisdiction *solely* for the purposes of entering a guilty plea and being sentenced, and if the Defendant had pled not guilty, the Southern District of Ohio would have been required to divest itself of jurisdiction and return the prosecution to the Eastern District of Kentucky. The Southern District of Ohio would not have been entitled to, much less required to, grant the Defendant a trial if he had pled not guilty. In fact, the Defendant never entered any plea to the Kentucky charges, which is why this case is now before the Court over ten years after Defendant was indicted.

The Court also rejects the United States' argument that the Speedy Trial Act's clock did not start until January 20, 2016, when Defendant first appeared for a status conference before the Eastern District of Kentucky. Although the United States' argument appears to fit within the plain language of the Speedy Trial Act, which establishes that the clock beings

to run on the later of the filing date of the indictment or the date the defendant first appears, the Sixth Circuit precedent discussed above reveals that the Speedy Trial Act applies differently in cases where a defendant has not entered a plea of not guilty. *See O'Dell*, 154 F.3d 358; *see also United States v. Robertson*, 260 F.3d 500 (6th Cir. 2001); *United States v. Levon*, 127 F. App'x 865 (6th Cir. 2005). However, the Sixth Circuit elected not to apply the *O'Dell* "requirement of a not guilty plea" rule in cases where a defendant enters a guilty plea, but such plea is later vacated on a collateral attack.

Instead, the Sixth Circuit established another rule for applying the Speedy Trial Act in cases like the one before the Court.  In *United States v. Bond*, 956 F.2d 628 (6th Cir. 1992), the Sixth Circuit considered the application of the Speedy Trial Act where the defendant had pled guilty to aiding and abetting bank robbery, and then successfully collaterally attacked his sentence pursuant to § 2255, over a year after being sentenced. The district court granted defendant's motion, "concluding that its failure to reestablish the factual basis for [defendant's] guilty plea ... required vacation of his sentence." *Id.*  After the defendant was returned to the district court for proceedings, defendant alleged that his scheduled trial date "violated his rights to a speedy trial under the Speedy Trial Act." *Id.* Acknowledging that a "literal reading" of the Speedy Trial Act makes it "clear that Congress did not specifically contemplate cases where a defendant's guilty plea was later vacated by the trial court," the Sixth Circuit proceeded to shove this square peg into the round hole of the Speedy Trial Act.  Considering which section of the Speedy Trial Act should apply – Section 3161 (e), which governs retrial following an appeal or collateral attack, or Section 3161(i), which is in harmony with the *O'Dell* rule and applies when trial did not commence because the defendant had entered a plea of guilty subsequently withdrawn – the Sixth

Circuit explained:

> In such cases, a defendant has never gone through trial, hence section 3161(e)'s protection of a defendant's rights on retrial do not apply because a defendant who has never been tried cannot later be *retried*. Likewise, read strictly, section 3161(i) applies only to situations where the defendant withdraws a guilty plea, and not where, as here, the trial court vacates his prior plea agreement. Thus, we must look beyond the plain wording of the Act to discern how it is to be applied to guilty pleas later vacated on collateral attack.

*Id.* at 630-31.

Finding the First Circuit's decision in *United States v. Mack*, 669 F.2d 28 (1st Cir. 1982) instructive, the Sixth Circuit discussed the First Circuit's reasoning and adopted it:

> In *Mack*, the court relied on the legislative history in concluding that Section 3161(e) and not 3161(i) applies to cases where a defendant's guilty plea agreement is vacated. The court noted that Congress intended for Section 3161(i) to prevent a defendant from entering a 'plea of guilty on the 59th day to one of several charges and wait several weeks, and then withdraw his plea before sentencing, thereby frustrating any prosecution on the other counts which might not yet have been dismissed.' *Mack*, 669 F.2d at 31-32 (quoting 120 CONG.REC. 41623 (1974)). Since this problem is not presented in cases where the court vacates a guilty plea, the *Mack* court concluded that Section 3161(i) did not apply to cases of this type. Instead, the court reasoned that Section 3161(e) is more appropriately applied to situations where a defendant's guilty plea is later vacated by a district court on habeas review. The Court did 'not think that the words 'tried again' in § 3161(e) was [sic] intended to exclude from its coverage cases involving a successful collateral attack upon a guilty plea conviction rather than after trial.' *Mack*, 669 F.2d at 32. The reasoning of *Mack* appears to be in accord with the policy behind the Speedy Trial Act and therefore we believe it should be followed by this circuit.

*Bond*, 956 F.2d at 631.

Therefore, Sixth Circuit precedent mandates that the Court apply Section 3161(e) to the present case, where defendant successfully attacked his conviction and sentence under § 2255, instead of Section 3161(i) and the *O'Dell* rule. Section 3161(e) provides that the seventy-day period shall begin running from "the date the action occasioning retrial

9

becomes final." In cases where the district court has vacated the conviction and sentence it previously imposed, the Sixth Circuit has determined that Section 3161(e)'s language requires the Speedy Trial Act clock to begin running on the "date that the district court vacated the ... guilty plea." *Bond*, 956 F.2d at 632.

This rule is difficult to apply in the present case, where the court vacating Defendant's conviction and sentence only had jurisdiction pursuant to Rule 20. The Southern District of Ohio granted Defendant's Motion to Vacate under § 2255 on September 30, 2015. Therefore, the "date the action occasioning retrial becomes final" would be September 30, 2015. However, this cannot be the start date for the Speedy Trial Act because once Defendant's conviction and sentence were vacated, the Southern District of Ohio was required to return the Rule 20 paperwork to the Eastern District of Kentucky, and this Court did not regain jurisdiction over Defendant's case until December 23, 2015 – the date the Rule 20 paperwork was returned. (Doc. # 111).

This interpretation is supported by precedent from this Circuit and others. In cases where the Court of Appeals has vacated a guilty plea, as opposed to the district court, the "circuits are split as to when to begin counting the limitations period under Section 3161(e)." *Id.* at 631. The Sixth Circuit has not yet resolved this issue, but "three of our sister circuits have held that the clock restarts on the day that the mandate issues"[2] and two other circuits "have held that the date that the mandate is received and filed by the district court is determinative for Speedy Trial Act purposes."[3] *United States v. Alexander*, 983 F.2d 1068

---

2   *United States v. Crooks*, 826 F.2d 4, 5 (9th Cir. 1987); *United States v. Felton*, 811 F.2d 190, 198 (3rd Cir. 1987); *United States v. Robertson*, 810 F.2d 254, 259 (D.C. Cir. 1987).

3   *United States v. Lasteed*, 832 F.2d 1240, 1243 (11th Cir. 1987); *United States v. Long*, 900 F.2d 1270, 1276 (8th Cir. 1990).

(6th Cir. 1992). Under either interpretation, the Speedy Trial Act clock does not begin running until jurisdiction has been restored to the district court. The Court determines that a similar rule should apply in cases where the district court has lost jurisdiction under Rule 20. Therefore, the Speedy Trial Act clock in this case did not begin running until the Southern District of Ohio's clerk formally returned the case to the Eastern District of Kentucky, where the prosecution began, and this Court was able to restore the proceeding to its docket. Accordingly, the Speedy Trial Act clock began running in this case on December 23, 2015, the date the Rule 20 paperwork was returned to the Eastern District of Kentucky. (Doc. # 111).

Taking December 23, 2015 as our starting point for computing the time prescribed by the Speedy Trial Act, the scheduled trial date of May 2, 2016 falls outside of the seventy-day limitations period. Nevertheless, there has <u>not</u> been a violation of the Speedy Trial Act. Defendant filed a Motion to Dismiss on February 26, 2016 (Doc. # 121), and pursuant to Section 3161(h)(1)(D) "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" shall be excluded "in computing the time within which the trial of any such offense must commence." Furthermore, pursuant to Section 3161(h)(1)(H), "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court" is also excluded. Since the Court took Defendant's Motion to Dismiss under advisement at the conclusion of the April 12, 2016 hearing on the motion, and this Order is being entered within thirty days after that hearing, the time period from February 26, 2016, through the date of this Order, April 27, 2016, is excluded from the calculation. Accordingly, the Speedy Trial Act

11

clock paused on February 26, 2016 – the sixty-fifth day of the seventy-day time limitation – and five days remain for the Defendant to be tried. Trial is scheduled to begin on May 2, 2016, within the seventy-day time limitation. Thus, there has been no Speedy Trial Act violation.

### C. *Sixth Amendment*

The Sixth Amendment "guarantees that, in all criminal prosecutions, the accused shall enjoy the right to a speedy trial." *Doggett v. United States*, 505 U.S. 647 (1992). Although the "Speedy Trial Clause is written with such breadth that, taken literally, it would forbid the government to delay the trial of an 'accused' for any reason at all," case law has "qualified the literal sweep of the provision by specifically recognizing the relevance of four separate enquiries: whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." *Id.* (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). "[N]one of the four factors" are "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Barker v. Wingo*, 407 U.S. at 533. Instead, "they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* Therefore, the Court will "engage in a difficult and sensitive balancing process," considering each of the four factors in turn. *Id.*

#### 1. Length of Delay

The first factor, length of the delay, is a "triggering mechanism." *United States v. Brown*, 498 F.3d 523, 530 (6th Cir. 2007). "Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the

12

threshold dividing ordinary from 'presumptively prejudicial' delay, since, by definition, he cannot complain that the government has denied him a speedy trial if it has, in fact, prosecuted his case with customary promptness." *Doggett*, 505 U.S. at 651-52. "Unlike the Speedy Trial Act, which protects against delay from the time of indictment or appearance, the Sixth Amendment protects against delay from" accusation – either arrest, indictment, or appearance, whichever is first. *United States v. Brown*, 498 F.3d 523, 530 (6th Cir. 2007) (citing *Dillingham v. United States*, 423 U.S. 64, 65 (1975)).  For purposes of this case, the Defendant was first accused of the crimes charged in the Eastern District of Kentucky on December 14, 2005, the date he was indicted.

As of the date of this Order, ten years, four months, and fourteen days have passed since the Defendant was indicted.  The Sixth Circuit has "found that a delay is presumptively prejudicial when it approaches one year." *United States v. Schreane*, 331 F.3d 548, 553 (6th Cir. 2003).  Therefore, the delay in this case has far exceeded the ordinary threshold and is "presumptively prejudicial."  Because the Defendant has satisfied this initial showing, the Court must analyze the three remaining factors.

### 2. Reason for Delay

"Closely related" to the first factor, length of delay, is the second factor "the reason the government assigns to justify the delay." *Barker*, 407 U.S. at 531.  "The Supreme Court has established a hierarchy of justification for presumptively prejudicial delay." *United States v. Watford*, 468 F.3d 891 (6th Cir. 2006).

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government.  A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.

> Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531. "The government, and for that matter, the trial court are not without responsibility for the expeditious trial of criminal cases." *Barker*, 407 U.S. at 527, n. 27. The Supreme Court has also held that "institutional problems" and other "[d]elay resulting from a systemic breakdown" can be charged to the Government and the trial court. *Vermont v. Brillon*, 556 U.S. 81, 94 (2009). However, the court should also "consider whether some of the delay is attributable to the defendant." *Brown*, 498 F.3d at 531; *see also United States v. Bass*, 460 F.3d 830, 837 (6th Cir. 2006). Delays "caused by defense counsel are properly attributed to the defendant, even where counsel is assigned." *Brillon*, 556 U.S. at 94.

In the present case, the reasons for the delay weigh against finding a Sixth Amendment violation. The delay in bringing Defendant to trial is attributable to a defect in Defendant's plea and sentencing in the Southern District of Ohio. The Defendant never formally entered a guilty plea to the Kentucky charges, yet was sentenced as if he had. Although the Court does not find this breakdown in the plea and sentencing process "automatically tolerable," it also does not find that the reasons for delay merit relief. *Doggett*, 505 U.S. at 657. The failure to ensure that Defendant had formally pled before sentencing likely constitutes negligence under the *Barker* hierarchy. However, none of the parties complained or even mentioned the lack of a guilty plea to the sentencing court. Thus, all participants in the process – the Government, the district court, and the Defendant – are responsible for this oversight, and the resulting delay. Furthermore, it is worth noting that the primary reason Defendant was not "speedily" brought to trial on the Kentucky

charges is because he elected to plead guilty and entered into a global plea agreement, covering both the Ohio and Kentucky charges. (Docs. # 126-1; 126-2). The length of the delay is also, at least partially, attributable to the Defendant's failure to raise this issue on direct appeal, as well as the approximately five-year delay between Defendant's sentencing and his Motion to Vacate under § 2255. Accordingly, while the Court is disconcerted by the lapse of over ten years and the breakdown of the plea and sentencing process in Defendant's case, the Court cannot say that the Government and the district court are more to blame for the delay than the Defendant. *See United States v. Flowers*, 476 F. App'x 55, 63 (6th Cir. 2012). Thus, this factor is neutral, and does not tip the scales in favor of the Government or the Defendant.

### 3. Defendant's Assertion of His Right

The third factor focuses on the Defendant's "responsibility to assert his right." *Barker*, 407 U.S. at 531. "The defendant's assertion of his speedy trial right ... is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." Conversely, the defendant's "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* at 531-32.

There is no dispute that Defendant first asserted his Sixth Amendment right to a speedy trial on February 26, 2016 – the date the instant Motion to Dismiss was filed – approximately ten years, two months, and twelve days after his indictment in the Eastern District of Kentucky. Although Defendant has now asserted his right to a speedy trial, he never did so until after his conviction and sentence were vacated on collateral attack. The fact that Defendant would have pled guilty, but for the defect in the plea and sentencing on the Kentucky charges, coupled with the lengthy amount of time that lapsed before

Defendant asserted his right to a speedy trial, is sufficient to "cast doubt on the sincerity of the defendant's demand." *United States v. Williams*, 753 F.3d 626, 633-634 (6th Cir. 2014) (citing *United States v. Brown*, 169 F.3d 344, 350 (6th Cir. 1999). Therefore, the Defendant's recent assertion of his speedy trial right deserves little weight because Defendant originally desired and intended to plead guilty to the Kentucky charges in 2007 and did not assert his Sixth Amendment rights until February 26, 2016. Accordingly, the third factor favors neither the Defendant nor the Government.

### 4. Prejudice

The fourth and final factor, prejudice to the defendant, "should be assessed in light of the interests of defendants which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532. The Supreme Court has identified three interests the Sixth Amendment serves: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* The Court's consideration of prejudice is "not limited to the specifically demonstrable" prejudice and "affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett*, 505 U.S. at 655 (citing *Moore v. Arizona*, 414 U.S. 25, 26)). In fact, the Supreme Court has "explicitly recognized that the impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony can rarely be shown." *Doggett*, 505 U.S. at 655 (citing *Barker*, 407 U.S. at 532)). "And though time can tilt the case against either side, one cannot generally be sure which of them it has prejudiced more severely." *Doggett*, 505 U.S. at 655. Therefore, the Court

must acknowledge that "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Id.* While "presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other" factors, "its importance increases with the length of delay." *Id.* at 656.

Despite the time lapse, whatever prejudice exists in this case is minimal. First, "no prejudice arose from [Defendant's] pretrial incarceration because even if he had not been detained in this case, he would have been" in federal custody on the Southern District of Ohio charges. *Brown*, 498 F.3d at 532. Second, "any anxiety or concern" that the Defendant experienced in this case "would fall short of that deemed sufficiently prejudicial in *Barker*" because the Defendant intended to plead guilty to the Kentucky charges in 2007 before the Southern District of Ohio, and would have successfully pled, but for the defect in the proceedings. Third, the Defendant has failed to proffer any evidence or argument that his defense was impaired by the delay, and instead, relies on presumptive prejudice. However, where "the government prosecutes a case with reasonable diligence, a defendant who cannot demonstrate how his defense was prejudiced with specificity will not make out a speedy trial claim no matter how great the ensuing delay." *United States v. Howard*, 218 F.3d 556, 564 (6th Cir. 2000). Therefore, because the Government prosecuted Defendant's case with reasonable diligence and all parties bear responsibility for the defect in Defendant's plea and sentence on the Kentucky charges, Defendant's failure to produce specific evidence that his defense has been prejudiced prevents him from establishing a Sixth Amendment speedy trial violation, even though there has been great delay between his indictment and trial.

In sum, after balancing the four factors, only the first factor weighs in favor of the Defendant, while the second and third factors favor neither party, and the fourth weighs against the Defendant. Considering all the factors together with the unique circumstances of this case, where Defendant intended to plead guilty almost nine years ago, the Court finds that Defendant's Sixth Amendment right to a speedy trial has not been violated.

### III.   Conclusion

For all of these reasons, **IT IS ORDERED** as follows:

(1)   Defendant's Motion to Dismiss (Doc. # 121) be, and is hereby **denied**; and

(2)   The time period between February 26, 2016 and the date of this Order, totaling **fifty-nine (59) days**, is **excluded from the Speedy Trial Act computation** pursuant to 18 U.S.C. §§ 3161(h)(1)(D) and 3161(h)(1)(H); and

(3)   The Final Pretrial Conference scheduled for Friday, April 29, 2016 is hereby **advanced** to **Thursday, April 28, 2016, at 2:00 p.m.**

This 27th day of April, 2016.



Signed By:
*David L. Bunning*   *DB*
United States District Judge

K:\DATA\ORDERS\Covington Criminal\2005\05-90 Order re DE 121.wpd